## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **PATRICIA LEMIEUX-LEWIS,** | : | |
| Plaintiff, | : | |
| | : | Civil Action No.: |
| v. | : | |
| | : | |
| **HARTFORD HEALTHCARE** | : | |
| **CORPORATION AND RUSHFORD** | : | |
| **CENTER, INC.,** | : | |
| | : | |
| Defendants. | : | Date:    December 17, 2013 |
| | : | |

### NOTICE OF REMOVAL

PLEASE TAKE NOTICE that the defendants, Hartford Healthcare Corp. and Rushford Center, Inc., file this Notice of Removal in accordance with 28 U.S.C. §§ 1331, 1441, and 1446. Defendants remove this action from the Superior Court of the State of Connecticut, Judicial District of Middlesex (the "Superior Court Action") to the United States District Court for the District of Connecticut.  As their reasons for removal, defendants state:

1.     By Summons and Complaint, plaintiff Patricia Lemieux-Lewis commenced a civil action against defendants in Connecticut Superior Court titled *Patricia Lemieux-Lewis v. Hartford Healthcare Corporation and Rushford Center, Inc.*, Docket Number MMX-CV-13-6010876-S, Return Date December 17, 2013.

2.     A true and correct copy of the Summons and Complaint served by plaintiff on defendants is attached hereto as <u>Exhibit A</u> and constitutes all processes, pleadings and orders served upon defendants in this action to the present date.  28 U.S.C. § 1446(a).

3.     Defendants were served with the Summons and Complaint on or about November 21, 2013.  This Notice of Removal is being filed within 30 days of the date on which defendants

were served with a copy of the Complaint in the Superior Court Action.  28 U.S.C. § 1446(b).

4       This Court has original "federal question" jurisdiction over this action pursuant to 28 U.S.C. § 1331 because plaintiff asserts a claim under Title VII of the Civil Rights Act of 1964, as amended.  This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1446.  Accordingly, the Complaint is properly removed pursuant to 28 U.S.C. §§ 1441 and 1446.

5.      This Notice of Removal is being filed in the District of Connecticut, the District Court of the United States for the district and division within which the Superior Court Action is pending.  28 U.S.C. §§ 1441 and 1446(a).

6.      Attached hereto as Exhibit B is a copy of the Notice to Superior Court, Judicial District of Middlesex, of Filing of Notice of Removal, the original of which is being filed with the Superior Court.  28 U.S.C. § 1446(d).

WHEREFORE, defendants respectfully request that this Action be removed and hereinafter proceed in the United States District Court for the District of Connecticut.

Respectfully submitted,

/s/ Elizabeth R. McKenna
Lori B. Alexander (CT08970)
Elizabeth R. McKenna (CT28113)
LITTLER MENDELSON, P.C.
One Century Tower
265 Church Street, Suite 300
New Haven, CT  06510
Telephone: 203.974.8700
Facsimile: 203.974.8799
lalexander@littler.com
emckenna@littler.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of December, 2013, a copy of the foregoing was

sent via first class mail, postage prepaid, to all counsel and pro se parties of record as follows:

Theodore W. Heiser
Sullivan Heiser, LLC
4 Post Office Square
Clinton, CT 06413

*/s/ Elizabeth McKenna*
Elizabeth R. McKenna

# Exhibit A

**SUMMONS - CIVIL**
JD-CV-1   Rev. 2-13
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. Secs. 3-1 through 3-21, 8-1

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
*www.jud.ct.gov*

See page 2 for instructions

[ ] "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.
[X] "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.
[ ] "X" if claiming other relief in addition to or in lieu of money or damages.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed *(Number, street, town and zip code)* *(C.G.S. §§ 51-346, 51-350)* | Telephone number of clerk *(with area code)* | Return Date *(Must be a Tuesday)* | | |
|---|---|---|---|---|
| 1 Court Street, Middletown, CT 06457 | ( 860 ) 343-6400 | December | 17 | 2013 |
| | | Month | Day | Year |

| [X] Judicial District | [ ] G.A. Number: | At *(Town in which writ is returnable)* *(C.G.S. §§ 51-346, 51-349)* | Case type code *(See list on page 2)* | |
|---|---|---|---|---|
| [ ] Housing Session | | Middletown | Major:  **M** | Minor:  **90** |

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)* | Juris number *(to be entered by attorney only)* |
|---|---|
| Theodore W. Heiser, of Sullivan Heiser, LLC | 432151 |

| Telephone number *(with area code)* | Signature of Plaintiff *(if self-represented)* |
|---|---|
| ( 860 ) 664-4440 | |

| Number of Plaintiffs:  1 | Number of Defendants:  2 | [ ] Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | Name *(Last, First, Middle Initial)* and Address of Each party *(Number; Street; P.O. Box; Town; State; Zip; Country, if not USA)* | |
|---|---|---|
| First Plaintiff | Name: Lemieux-Lewis, Patricia<br>Address: 133 West Main Street, Lot A8, Clinton, CT 06413 | P-01 |
| Additional Plaintiff | Name:<br>Address: | P-02 |
| First Defendant | Name: Hartford Healthcare Corporation, One, State Street, Suite 19, Hartford, CT 06103<br>Address: c/o Agent for Service: Winship Service Corporation, Shipman & Goodwin LLP, 1 Constitution Plaza, Harford, CT 06103. | D-01 |
| Additional Defendant | Name: The Rushford Center, Inc., 883 Paddock Avenue, Meriden, CT 06450<br>Address: c/o Agent for Service: Richard W. Tomc, Esq., 49 Main Street, Middletown, CT 06457 | D-02 |
| Additional Defendant | Name:<br>Address: | D-03 |
| Additional Defendant | Name:<br>Address: | D-04 |

**Notice to Each Defendant**

1. YOU ARE BEING SUED. This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at *www.jud.ct.gov* under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at *www.jud.ct.gov* under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. The Clerk of Court is not allowed to give advice on legal questions.

| Signed *(Sign and "X" proper box)* | [X] Commissioner of the Superior Court [ ] Assistant Clerk | Name of Person Signing at Left<br>Theodore W. Heiser | Date signed<br>11/20/2013 |
|---|---|---|---|

| If this Summons is signed by a Clerk: | For Court Use Only |
|---|---|
| a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.<br>b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.<br>c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.<br>d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint. | File Date |

| I certify I have read and understand the above: | Signed *(Self-Represented Plaintiff)* | Date |
|---|---|---|

A TRUE COPY ATTEST:

Name and address of person recognized to prosecute in the amount of $250

Selina L. Monks of Westbrook, CT 06498

Keith D Niziankiewicz
Connecticut State Marshal
Indifferent Person

| Signed *(Official taking recognizance; "X" proper box)* | [X] Commissioner of the Superior Court [ ] Assistant Clerk | Date<br>11/20/2013 | Docket Number |
|---|---|---|---|

(Page 1 of 2)

RETURN DATE: DECEMBER 17, 2013    \* SUPERIOR COURT

PATRICIA LEMIEUX-LEWIS,             \* J.D. OF MIDDLESEX
                                      \*
            Plaintiff,            \* AT MIDDLETOWN
                                      \*
         v.                      \*
                                      \*
HARTFORD HEALTHCARE           \* NOVEMBER 20, 2013
CORPORATION, AND THE RUSHFORD  \*
CENTER, INC.                         \*
            Defendants.

## COMPLAINT

### PARTIES

1. Plaintiff Lemieux-Lewis ("Lemieux-Lewis" or "plaintiff") is an individual who currently resides at 133 West main Street, Lot A6, Clinton, Connecticut.

2. At all times relevant to this Complaint, Lewis was employed by the defendant Hartford HealthCare Corporation ("Hartford" or "defendant").

3. Hartford is a Connecticut corporation that owns numerous medical facilities throughout the State of Connecticut.  Hartford's corporate headquarters are located at One State Street, Suite 19, Hartford, Connecticut.

4. The Rushford Center, Inc. ("Rushford") is a part of Hartford's corporate network and shares common management and ownership.

5. Hartford's personnel policies apply to Rushford employees.

6. At all times relevant, the plaintiff worked at Rushford, located at 883 Paddock Avenue, Meriden, Connecticut.

7.  For purposes of this Complaint, Hartford and Rushford will be referred to jointly as "Hartford."

## PROCEDURAL REQUIREMENTS

8. On or about March 21, 2013, Lewis filed a charge of discrimination with the Connecticut Commission on Human Rights and Opportunities ("CHRO").    Lewis' charge with the CHRO was designated as CHRO No. 1330405.

9. On August 29, 2013, the CHRO issued Lewis a Release of Jurisdiction in connection with her claims.   (Ex. A.)  Lewis is filing this action within 90 days of receiving the aforementioned Release of Jurisdiction.

10.    A claim was also made to U.S. Equal Employment Opportunity Commission ("EEOC") and was designated as EEOC No. 16A201300974.

11. On or about October 25, 2013, the EEOC issued a Letter of Right to Sue (Ex. B) and this action is being filed within 90 days of receiving the aforementioned Letter of Right to Sue.

## BACKGROUND

12. On or about February 7, 2011, Lewis commenced employment at Hartford's Rushford Center as an accountant.

13.   Lewis worked in an area at Rushford that did not involve patient treatment and she had extremely limited contact with patients.

14.  In June 2012, Hartford notified its employees that it was adopting a mandatory influenza vaccination program at all of its facilities.  Hartford termed the program a "universal" flu prevention policy.  The program was announced officially by the issuance of a June 7, 2012, memorandum to all employees under the

signature of Hartford's Senior Vice President and Chief Medical Officer, Rocco Orlando III, MD.  By instituting this program, Hartford indicated that it was "joining a growing number of elite health care systems across the United States that have instituted" similar programs.

15.   Hartford advised its employees that the intent of the mandatory vaccination program is safety: the safety of its employees and its patients.

16.  Hartford noted that it had provided to its employees free and convenient influenza vaccinations through its member organizations.  Those who declined the vaccination were required to go on record as formally declining the vaccination.

17.   Approximately half of its employees exercised their freedoms and declined the vaccination.  As a result, and claiming that across the board vaccination was necessary to protect its employees and patients, Hartford adopted the mandatory vaccination program.

18.  Although Hartford stated that there were "a number of key studies that support the link between a high employee vaccination rate and patient safety", the announcement failed to cite any such studies.  The mandatory vaccination program applied to "all employees, licensed practitioners who come on the premises,  . . . volunteers and students."

19.  Hartford touted the results of similar programs at other facilities by stating that the "results speak for themselves."  One would have thought that Hartford was indicating that by "results" it meant that influenza illnesses or deaths had decreased as a result of the imposition of mandatory vaccination programs.  That was not the case.  Instead, by stating, "results speak for themselves," Hartford was merely

stating the tautological conclusion that by making the vaccinations mandatory other facilities "had a nearly 100 percent vaccination rate . . . compared to a 58.3 percent rate among institutions without a requirement."

20.    The announcement noted that "[o]nly medical and religious exemptions will be allowed, and requests for these exemptions will be carefully evaluated. Individuals will have color-coded ID badge tags indicating their vaccination status."

21.    Further, Hartford required that "[i]n order to fully protect our patients/ clients, staff members with approved exemptions will be required to wear surgical masks during the flu season when they are within six feet of an area in which they may encounter patients."    The area where masks were to be required included "clinical areas, lobbies, hallways and public dining areas, among others."

22.    Finally, the policy stated that "[s]taff members without an approved medical or religious exemption who have not received influenza vaccination by Dec. 1 will be disciplined" "up to dismissal."

23.    Lewis did not receive an influenza vaccination prior to December 1, 2012. She was placed on unpaid suspension at that time.

24.    Lewis submitted a Religious Exemption request to Hartford on December 10, 2012.    The religious exemption was approved on December 12, 2012. Thereafter, Lewis returned to work in the Rushford finance department.

25.    Subsequent to returning to work, Lewis was required to wear a color-coded ID badge indicating her failure to comply with the mandatory vaccination program and highlighting unnecessarily her religious status.

26. Lewis was also required to wear a surgical mask at work any time she was going to be potentially within six feet of an area where patients may be found. The surgical mask also identified Lewis as being non-compliant and highlighted her religious beliefs unnecessarily.

27. Whether the influenza vaccination is an effective tool against the spread of Influenza is not a closed issue scientifically. More importantly, there is no strong evidence to suggest that mandatory vaccination programs do anything to protect fellow employees or patients from contracting influenza. As such, there is no legitimate non-discriminatory basis for the imposition of additional requirements on employees with religious beliefs such as Lewis'. There is also no legitimate non-discriminatory basis for Lewis having to wear the "scarlet letter" ID badge or to wear surgical masks when potentially near patients.

28. Hartford cites to "a number of key studies that support the link between a high employee vaccination rate and patient safety." However, numerous studies have indicated that there is no such connection. In reality, the influenza vaccination has limited effectiveness. As such, even those who receive an influenza vaccination are still susceptible to contracting influenza and to transmit the illness to fellow employees or patients.

29. In discussing influenza, many commentators, medical providers, employers and others play it loose with the language. The vaccinations now on the market are effective, to the extent they are effective, against influenza virus types A and B. There are literally hundreds of viruses that cause flu-like symptoms during the same periods of time generally considered "flu season." These viruses lead to

many cases of "flu-like illnesses" as opposed to actual diagnoses of influenza. Estimates indicate that only about 10% of all circulating viruses are actually virus types A and B. Therefore, as many as 90% of cases involve a flu-like illness against which the vaccinations have no effect. The dilemma is illustrated by common experience. Many people feel like they have the flu, they go to the doctor and a swab culture is taken to be tested. As many as 85% to 90% of those people will be told that the test was negative for influenza. That is because those people are actually suffering from another flu-like illness. See Jefferson, T., et al., Vaccines to Prevent Influenza in Healthy Adults, Cochrane Database Syst. Rev., July 7, 2010.

30. Recent data issued by the Centers for Disease Control and Prevention ("CDC") indicates that last year's influenza vaccination has proven to have a very low effectiveness rate.

31. The CDC data for people 65 and older was even more disappointing in terms of effectiveness rate.

32. As such, even those who receive the influenza vaccine are susceptible to contraction of influenza or a flu-like illness. Those employees can also pass those viruses to other employees and patients. However, despite that potential, those employees are not required to wear a mask during the flu season, as are those who are granted a religious exemption.

33. Four comprehensive reviews of all available epidemiological studies have concluded that there is no statistically significant scientific or clinical evidence that higher rates of vaccination of healthcare workers result in fewer cases of influenza and its complication among their patients. Michiels, B., et al., A Systematic Review

of the Evidence on the Effectiveness and Risks of Inactivated Influenza Vaccines in Different Target Groups, Vaccine, 2011, 29(49): 2601-2605 (finding that the "benefit of vaccinating healthcare workers to protect their patients remains highly questionable and should not be mandatory at present"); Jefferson, supra.; Thomas, RE., Influenza Vaccination for Healthcare Workers Who Work with the Elderly: Systematic Review, Vaccine, 2010, 29(2): 344-356; Guidelines in Disrepute: A Case Study of Influenza Vaccination of Healthcare Workers, J. Street, T. Delany, Australian and New Zealand Journ. of Public Health, Vol. 36, No. 4, July 2012 (concluding that there exists "a paucity of evidence to support substantial investment in health care worker vaccination programs in order to protect patients from nosocomial (healthcare associated) influenza infection" and "it can be argued that there is, at present, no direct evidence to support universal healthcare worker influenza vaccination").

34.   There is no evidence that employees who do not receive an influenza vaccination are less likely to pass the illness to others by wearing a surgical mask. In fact, the CDC has indicated that employing surgical masks for this purpose is counterproductive and may actually increase the likelihood of contamination or infection because of the increased contact between hands and the mouth, nose and/ or eyes required by mask use.   Cassanova, et al., CDC's Emerging Infectious Diseases, 2008, Vol. 14, No. 8.

35.   Hartford has not cited any legitimate non-discriminatory basis for its mandatory vaccination program that is supported by scientific evidence.  In fact, the

scientific evidence indicates that the bases for the program are unsupported scientifically.

36. The program clearly discriminates against those with certain religious beliefs and convictions. The program also discriminates against those who suffer from certain disabilities that support a medical exemption.

37. Those who obtain religious exemptions are unfairly labeled as non-compliant by both wearing the color-coded ID badge and having to wear the surgical mask. Patients are advised of the danger these religious and disabled persons present because those persons are forced to wear masks in their presence when other similarly situated employees without the same religious beliefs, who also could contaminate those patients, do not.

38. As a result of the foregoing, Lewis has suffered, and will continue to suffer, mental, physical and emotional distress, loss of enjoyment of life, damage to her personal and professional reputation, loss of salary and other financial losses.

## COUNT ONE
### (RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED)

39. Paragraphs 1 through 38 are hereby reincorporated in this Count One the same as if fully plead herein.

40. The defendant is a Connecticut corporation which is required to abide by federal and state anti-discrimination statutes including Title VII of the Civil Rights Act of 1964 and the Connecticut Fair Employment Practices Act, General Statutes § 46a-58(a), *et seq.*

41. Title VII requires that no employer take any action which discriminates or which has the effect of discriminating against an employee on the basis of any statutorily protected classification, including, without limitation, one's religion pursuant to 42 U.S.C. §§ 2000e-2(a), 2000e-2(a)(1), 2000e-2(b) and 2000e-2(c), among others.

42. The defendant's mandatory vaccination program discriminates and/or has the effect of discriminating against those, including the plaintiff, whose religious beliefs require that they not receive flu vaccinations.

43. As a direct and proximate result of the discriminatory and malicious actions of the defendant, plaintiff has suffered significant financial damage as well as embarrassment, harassment, loss of reputation and emotional distress.

44. As a direct and proximate result of the malicious, willful and wanton conduct, and reckless and/or intentional disregard for the civil rights of the plaintiff by the defendant, the plaintiff is entitled to recover exemplary damages and attorney's fees from the defendant.

45. As a further direct and proximate result of the malicious, willful and wanton conduct, and reckless and/or intentional disregard for the civil rights of the plaintiff by the defendant, the plaintiff is entitled to injunctive relief in the form of a permanent injunction against the imposition of a mandatory vaccination program applied to its employees and/or the open designation of those who have been granted exemptions from the mandatory vaccination program.

WHEREFORE, the plaintiff claims:

a. compensatory damages, including but not limited to, lost wages, lost benefits, a depletion of personal savings, emotional distress, mental anguish, humiliation, embarrassment, loss of enjoyment of life, and loss of enjoyment of profession;

b. interest and costs;

c. punitive damages;

d. a permanent injunction against the mandatory vaccination program;

e. a permanent injunction against the open designation of those who have received exemptions from the mandatory vaccination program;

f. statutory and/or common law attorney's fees and legal costs; and

g. such other relief as in law or equity that this Court deems appropriate and equitable.

## COUNT TWO
## (RELIGIOUS DISCRIMINATION IN VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT)

46. The allegations of paragraphs 1 through 38 are repeated and re-alleged as if set forth fully herein.

47. The defendant is a Connecticut corporation which is required to abide by federal and state anti-discrimination statutes including Title VII of the Civil Rights Act (CFEPA) of 1964 and the Connecticut Fair Employment Practices Act, General Statutes § 46a-58(a), *et seq.*

48. The CFEPA requires that no employer take any action which discriminates or which as the effect of discriminating against an employee on the basis of any statutorily protected classification, including, without limitation, one's religions

pursuant to General Statutes §§ 46(a)-58(a), 46a-60(a)(1), and 46a-60(a)(4), among others.

49. The defendant's mandatory vaccination program discriminates and/or has the effect of discriminating against those, including the plaintiff, whose religious beliefs require that they no receive flu vaccinations.

50. As a direct and proximate result of the discriminatory and malicious actions of the defendant, plaintiff has suffered significant financial damage as well as embarrassment, harassment, loss of reputation and emotional distress.

51. As a direct and proximate result of the malicious, willful and wanton conduct, and reckless and/or intentional disregard for the civil rights of the plaintiff by the defendant, the plaintiff is entitled to recover exemplary damages and attorney's fees from the defendant.

52. As a further direct and proximate result of the malicious, willful and wanton conduct, and reckless and/or intentional disregard for the civil rights of the plaintiff by the defendant, the plaintiff is entitled to injunctive relief in the form of a permanent injunction against the imposition of a mandatory vaccination program applied to its employees and/or the open designation of those who have been granted exemptions from the mandatory vaccination program.

WHEREFORE, the plaintiff claims:

a. compensatory damages, including but not limited to, lost wages, lost benefits, a depletion of personal savings, emotional distress, mental anguish, humiliation, embarrassment, loss of enjoyment of life, and loss of enjoyment of profession;

b. interest and costs;

c. punitive damages;

d. a permanent injunction against the mandatory vaccination program;

e. a permanent injunction against the open designation of those who have received exemptions from the mandatory vaccination program;

f. statutory and/or common law attorney's fees and legal costs; and

g. such other relief as in law or equity that this Court deems appropriate and equitable.

## COUNT THREE

### (NEGLIGENCE PER SE)

53. The allegations of paragraphs 1 through 38 are repeated and re-alleged as if set forth fully herein.

54. The defendant's mandatory vaccination program requires those that receive an exemption from the vaccination program to wear a badge indicating that they have not been vaccinated.

55. In addition, the defendant's mandatory vaccination program requires that that receive an exemption from the vaccination program to wear a facemask under certain circumstances.

56. Because she is an administrative employee, other employees as well as patients are aware that the plaintiff's need to wear a mask is related to her refusal to undergo a vaccination.

57. Whether an employee has undergone a vaccination is protected health information as defined by the Health Insurance Potability and Accountability Ace (HIPPA), H2 U.S.C. §1320d.

58. HIPAA prohibits the disclosure of protected health information.

59. The plaintiff has not voluntarily disclosed her protected health information.

60. Instead, the defendant's policy has mandated that she disclose her protected health information in violation of the prohibitions set forth in HIPAA.

61. The mandatory vaccination program violates the statue.

62. The Plaintiff is a member of the class of persons intended to be protected by the State.

63. The disclosure of protected health information is an injury the statute intended to protect against.

64. The violation of the statute caused the disclosure of the protected health information.

WHEREFORE, the plaintiff claims:

a. compensatory damages, including but not limited to, lost wages, lost benefits, a depletion of personal savings, emotional distress, mental anguish, humiliation, embarrassment, loss of enjoyment of life, and loss of enjoyment of profession;

b. interest and costs;

c. punitive damages;

d. statutory and/or common law attorney's fees and legal costs; and

e. such other relief as in law or equity that this Court deems appropriate and equitable.

PLAINTIFF,
PATRICIA LEMIEUX-LEWIS

BY: _____

Theodore W. Heiser
Sullivan Heiser, LLC
4 Post Office Square
Clinton, Connecticut 06413
Juris No. 432151
(860) 664-4440 (tel)
(860) 664-4422 (fax)
twh@sullivanheiser.com

A TRUE COPY ATTEST

Keith D Niziankiewich
Connecticut State Marshal
Indifferent Person

| | |
|---|---|
| RETURN DATE: DECEMBER 17, 2013 | * SUPERIOR COURT |
| PATRICIA LEMIEUX-LEWIS, | * J.D OF MIDDLESEX |
| Plaintiff, | * AT MIDDLETOWN |
| v. | * NOVEMBER 20, 2013 |
| HARTFORD HEALTHCARE CORPORATION AND THE RUSHFORD CENTER, INC. | * |
| Defendants. | * |

## STATEMENT OF AMOUNT IN DEMAND

The amount in demand, exclusive of interest and costs, is in excess of FIFTEEN THOUSAND ($15,000.00) DOLLARS.

PLAINTIFF,
PATRICIA LEMIEUX-LEWIS

BY:_____
Theodore W. Heiser
Sullivan Heiser, LLC
4 Post Office Square
Clinton, Connecticut 06413
Juris No. 432151
(860) 664-4440 (tel)
(860) 664-4422 (fax)
twh@sullivanheiser.com

A TRUE COPY ATTEST

Keith D Niziankiewicz
Connecticut State Marshal
Indifferent Person

15 of 15

# EXHIBIT A

STATE OF CONNECTICUT
COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Patricia Lemieux-Lewis
COMPLAINANT

CHRO No. 1330405

vs.

EEOC No. 16A201300974

Hartford Healthcare
RESPONDENT

## RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint.

The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the Respondent transacts business. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at 25 Sigourney Street, Hartford, CT 06106 at the same time all other parties are served. THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

August 29, 2013
Date:

Tanya A. Hughes
Interim Executive Director

Theodore W. Heiser (Via email)
Beverly R. Coleman (Via email)

# EXHIBIT B

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  Patricia A. Lemieux-Lewis
     133 West Main Street Lot A6
     Clinton, CT 06413

From:  Boston Area Office
       John F. Kennedy Fed Bldg
       Government Ctr, Room 475
       Boston, MA 02203

☐  *On behalf of person(s) aggrieved whose identity is*
   *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | |
|---|---|---|
| 16A-2013-00974 | Anne R. Giantonio,<br>Intake Supervisor | *(See also* |

*Handwritten note: Need Exhibit A 8/29/13 Release or Jurisdiction*

### NOTICE TO THE PERSON AGGRIEVED:

Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA): This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐  More than 180 days have passed since the filing of this charge.

☒  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

_____
Feng K. An,
Acting Director

OCT 2 5 2013
*(Date Mailed)*

cc:

HARTFORD HEALTHCARE
One State Street Suite 19
Hartford, CT 06103

Theodore W. Heiser
Sullivan Law Firm LLC
Attorneys-At-Law
4 Post Office Square
Clinton, CT 06413



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Boston Area Office**

John F. Kennedy Federal Building
Government Center
Room 475
Boston, MA 02203-0506
(617) 565-3200
TTY (617) 565-3204
FAX (617) 565-3196

Charge Number: 16A-2013-00974C

## CERTIFICATE

Pursuant to 1601.28 (a) (2) of the Equal Employment Opportunity Commission's Regulations, this is to certify that it is probable that the Commission will be unable to complete its administrative processing of the above referenced charge, due to pending workload within 180 days from the filing of the charge.

OCT 2 5 2013
_____
Date

_____
Feng K. An
Acting Director

# Exhibit B

DOCKET NO:  MMX-CV-13-6010876-S  :  SUPERIOR COURT

             :

PATRICIA LEMIEUX-LEWIS,   :  J.D. OF MIDDLESEX

             :

    Plaintiff,      :

             :

  v.          :

             :

HARTFORD HEALTHCARE CORP.  :  DECEMBER 17, 2013

AND RUSHFORD CENTER, INC.,   :

             :

    Defendants.     :

             :

## <u>NOTICE TO SUPERIOR COURT OF FILING OF NOTICE OF REMOVAL</u>

   PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, the

defendants, Hartford Healthcare Corporation and Rushford Center, Inc., today filed a Notice of

Removal of this action in the United States District Court for the District of Connecticut.  A copy

of said Notice is attached hereto as <u>Exhibit A</u>.

   This Notice to Superior Court was filed and served pursuant to 28 U.S.C. § 1446(d).

          Respectfully submitted,
          HARTFORD HEALTHCARE CORP. and
          RUSHFORD CENTER, INC.


          */s/ Elizabeth McKenna*
          Lori B. Alexander
          Elizabeth R. McKenna
          LITTLER MENDELSON, P.C.
          One Century Tower
          265 Church Street, Suite 300
          New Haven, CT  06510
          Telephone: 203.974.8700
          Facsimile: 203.974.8799
          Juris No. 426891
          <u>lalexander@littler.com</u>
          <u>emckenna@littler.com</u>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of December, 2013, a copy of the foregoing was

sent via first class mail, postage prepaid, to all counsel and pro se parties of record as follows:

Theodore W. Heiser
Sullivan Heiser, LLC
4 Post Office Square
Clinton, CT 06413

*/s/ Elizabeth McKenna*
Elizabeth R. McKenna

2.